## AUDREY CROSS *vs.* DONALD L. HEWITT & others.[1]

No. 99-P-1159.

Middlesex. May 10, 2001. - September 18, 2001.

Present: PORADA, KANTROWITZ, & COHEN, JJ.

*Insurance,* Homeowner's insurance. *Statute,* Construction. *Limitations, Statute of. Practice, Civil,* Death of party.

This court concluded that, in order to give effect to the substance of legislative intent, G. L. c. 197, § 9A, did not require a plaintiff to wait one year after the death of a deceased defendant prior to filing a claim against his estate, where, had the plaintiff waited one year, the statute of limitations governing the claim would have expired, and where the real party at interest was an insurance carrier that had been promptly informed of the plaintiff's action. [540-542]

CIVIL ACTION commenced in the Superior Court Department on September 2, 1997.

The case was heard by *Stephen E. Neel,* J., on a motion to dismiss.

*Lauren A. Boice* for the plaintiff.

*Paul M. Richardson* for Donald L. Hewitt.

KANTROWITZ, J. One wonders how Yossarian[2] would have responded: To comply with the statute, the plaintiff has to wait one year to file suit. If the plaintiff waits one year to file suit she runs afoul of the statute of limitations. Catch-22.

The issue before us is whether G. L. c. 197, § 9A, requires a plaintiff to wait one year after the death of a deceased defendant prior to filing a claim against his estate, where (1) by waiting the year, the statute of limitations governing the claim would have expired; and (2) the real party at interest is an insurance carrier. We hold that it does not, and reverse the judgment allowing the defendant Donald L. Hewitt's motion to dismiss.

---

[1]Richard G. Hewitt and Elizabeth H. Kennedy.

[2]Heller, Catch-22 (Dell ed. 1978).

1. *Facts.* The plaintiff, Audrey Cross, was injured on the defendants' premises on September 23, 1994. On September 2, 1997, the plaintiff filed her complaint naming Donald L. Hewitt, Richard G. Hewitt, and Elizabeth H. Kennedy, as defendants.[3] A copy of the complaint was sent to Holyoke Mutual Insurance (insurer), the insurer for the premises where the plaintiff was injured.

The plaintiff, unable to locate any of the defendants, perfected service through publication. In November, 1997, the insurer answered the complaint on behalf of Donald Hewitt, its insured. Three months later, the insurer, realizing that Donald Hewitt had died on October 16, 1996, filed a suggestion of death. The insurer moved that the matter be stayed until the plaintiff amended her complaint and perfected service upon a duly appointed representative of Donald Hewitt's estate. The plaintiff, however, was unable to locate any administrator for the estate, and was also unable to appoint a public administrator to probate it.[4] The defendant's motion to dismiss was granted on the basis of the nullity doctrine.[5] The judge found that, pursuant to G. L. c. 197, § 9, as the plaintiff should have filed suit against the executor or administrator of the deceased's estate, any attempted service on the decedent was void.

The plaintiff filed a motion to reconsider the dismissal of her action, arguing that G. L. c. 197, § 9A, allowed her to file suit

---

[3]The case against Donald L. Hewitt is the one before this court. On December 21, 1998, a default judgment was entered against Elizabeth H. Kennedy and Richard G. Hewitt, Donald's siblings and co-owners of the premises. Kennedy and Richard G. Hewitt were not insured under the policy issued by the insurer. At oral argument, we were informed that the default judgment has since been vacated.

[4]A public administrator apparently could not be appointed as there was a suggestion that heirs were available to probate the estate. See G. L. c. 194, § 4 ("A public administrator shall, except as hereinafter provided, take out letters of administration and faithfully administer upon the estates of persons who die intestate . . . leaving property in his county to be administered, if there is no known husband, widow or heir of such deceased living in the commonwealth at the time of filing the petition"). At the time, it appeared that Richard Hewitt and Kennedy were living in New Hampshire. Once again, the record is unclear on this point.

[5]"The nullity doctrine states that a complaint brought against a deceased person cannot be maintained because it is, 'in truth, brought against nobody.' " *White* v. *Helmuth*, 45 Mass. App. Ct. 634, 635 n.2 (1998), quoting from *Chandler* v. *Dunlop*, 311 Mass. 1, 5 (1942).

against the deceased where the real party at interest is the insurance company. The judge denied the motion, reasoning that § 9A was inapplicable because it required that the plaintiff bring her action a year *after* the deceased's death. Since the plaintiff had brought the action within one year of Donald Hewitt's death, the judge denied the motion for reconsideration, notwithstanding the predicament in which the plaintiff found herself: if she waited the one year to comply with the provision of § 9A, the three-year statute of limitations, as set out in the same statute, would have expired.[6]

2. *Discussion.* To resolve this conflict, we start with an examination of the two sections of the statute in question, G. L. c. 197, §§ 9 and 9A.

General Laws c. 197, § 9, as amended by St. 1989, c. 329, § 5, allows a creditor of the deceased to sue the executor or administrator of the deceased's estate so long as the "action is commenced within one year after the date of death of the deceased . . . ."[7] The purpose of the statute is to expedite the settlement of estates. See *Parker* v. *Rich,* 297 Mass. 111, 114

---

[6]General Laws c. 197, § 9A, as amended by St. 1993, c. 319, states:

"Notwithstanding the provisions of section nine, an action for personal injuries or death, *if commenced more than one year after the date of death of the deceased, may be brought* against said executor or administrator, *provided that such action is commenced within three years* next after the cause of action accrues, and provided further that any judgment recovered in any action so brought may be satisfied only from the proceeds of a policy of insurance or bond, if any, and not from the general assets of the estate.

"If an executor or administrator has not been appointed, then an action allowed under this section may be maintained without such appointment, and shall be maintained naming the decedent as the defendant. In such event any service of process that may be necessary shall be made upon the entity providing the insurance or bond." (Emphasis added.)

[7]Sections (*a*) and (*b*) of c. 197, § 9, provide in full:

"(*a*) Except as provided in this chapter, an executor or administrator shall not be held to answer to an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased and unless, before the expiration of such period, the process in such action has been served by delivery in hand upon such

(1937) ("The main design of this statute, as disclosed by its words and arrangement, was not to make it easier for plaintiffs to institute actions but to prevent harm to defendants arising from actions delayed by the plaintiffs within limits previously permitted by the statutes"); *Eresian* v. *Mattei*, 52 Mass. App. Ct. 16, 17 (2001) ("The general purpose of these provisions 'is that the settlement of the estates of deceased persons should not be unnecessarily delayed.' *Forbes* v. *Harrington*, 171 Mass. 386, 391 [1898]").

General Laws c. 197, § 9A, on the other hand, was enacted to aid tort plaintiffs in the recovery of damages where the plaintiffs had failed to bring suit within the short one-year statute of limitations provided in § 9, and where the real party in interest is the insurance company. See *Nutter* v. *Woodard*, 34 Mass. App. Ct. 596, 598 & n.1 (1993). See also *Mullins* v. *Garthwait*, 875 F. Supp. 14, 17-18 (D. Mass. 1994). The Legislature, in enacting § 9A, intended to extend the time for filing claims against decedents or their estates; it did not intend to limit tort claims or require plaintiffs to defer filing suit for one year under any circumstances. Should action begin within one year, the entire estate may be liable for any judgment. See c. 197, § 9. In contrast, under § 9A, a plaintiff's judgment may only be satisfied from proceeds provided by an insurance policy or bond, and not from the general assets of the estate. In this way, § 9A, in conjunction with § 9, protects the estate of the deceased from claims that are too remote.

Applying the words of G. L. c. 197, § 9A, literally in this case would lead to an absurd result. The plaintiff could not wait

executor or administrator or service thereof accepted by him or a notice stating the name of the estate, the name and address of the creditor, the amount of the claim and the court in which the action has been brought has been filed in the proper registry of probate.

"(*b*) An executor or administrator shall not be held to answer to an action by a creditor of the deceased which is commenced within any other or additional period of limitation for bringing such action provided by or under this chapter unless before the expiration of such period the process in such action has been served by delivery in hand upon him or service thereof accepted by him or a notice as aforesaid has been filed in the proper registry of probate."

a full year after the death of the deceased to file her suit, as the three-year statute of limitations would have run. Section 9A is clearly intended to allow tort claimants access to a decedent's insurance policy without regard to the short statute of limitations period applicable to claims against a decedent's estate. The Legislature, in enacting § 9A, did not intend to prohibit suits brought within the first year of the decedent's death; rather, it was emphasizing that an action could still be brought after the first year, if the insurance company were the real party at interest. "We do not depart lightly from the express wording of a statute, . . . but in the unusual circumstances appearing here we [hold] that a deviation is justified. . . . [Statutory] interpretation should tend to preserve the substance of a statute rather than diminish it, should not override common sense, . . . or produce absurd or unreasonable results." (Citations omitted.) *Dillon* v. *Massachusetts Bay Transp. Authy.*, 49 Mass. App. Ct. 309, 315-316 (2000).

The insurer, the real party at interest, was promptly informed of the plaintiff's action. The insurer has "not claim[ed] that it was prejudiced, in any material way, as the events unfolded. . . . To rule against the plaintiff in these circumstances 'would . . . allow the insurer a windfall . . . .' " *White* v. *Helmuth*, 45 Mass. App. Ct. 634, 635 (1998), quoting from *Nutter* v. *Woodard*, 34 Mass. App. Ct. at 600.

The judgment of dismissal is reversed and the matter is remanded to the Superior Court for further proceedings not inconsistent with this opinion.

*So ordered.*